Estate of Harvey Seward, W. R. Seward, Executor v. Commissioner.
Estate of Harvey Seward v. Commissioner
Docket No. 8659.
United States Tax Court
1947 Tax Ct. Memo LEXIS 215; 6 T.C.M. (CCH) 510; T.C.M. (RIA) 47129; May 7, 1947
J. Gordon Bohannan, Esq., Petersburg, Va., Edward H. Hardy, Esq., and Benjamin T. Kinsey, Jr., Esq., for the petitioner. George J. LeBlanc, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined an estate tax deficiency heroin of $29,170.04. All issues have been settled by stipulation between the parties except as to the includibility of the values of certain insurance policies. The estate tax return was filed May 16, 1944, with the collector of internal revenue for the eastern district of Virginia at Richmond. Decedent died February 17, 1943. Findings of Fact On April 24, 1919, decedent assigned to the Petersburg Savings & Trust Company, as trustee, any and all moneys payable after *216 his death on the following insurance policies taken out by decedent on his own life: Policy No.
Company
Amount
329,997
Phoenix Mutual Life Insurance Company of Hartford
$30,000
2,230,872
Equitable Life Assurance Society of N. Y. *
30,000
154,121
Provident Life & Trust Co. of Philadelphia *
15,000
270,780
Provident Life & Trust Co. of Philadelphia *
10,000
402,910
Travelers Insurance Company of Hartford
5,000
[a1] Equitable Life Assurance Society of N. Y. is now Equitable Life Assurance Society of the United States and Provident Life & Trust Co. of Philadelphia is now Provident Mutual Life Insurance Co. of Philadelphia.
These assignments were accomplished by three separate instruments in writing. One instrument assigned the moneys payable on the Phoenix policy to the trustee for the benefit of Dorothy Seward. Another did likewise with respect to the Equitable policy for the benefit of Sarah Seward, and a third instrument covered the Provident and Travelers policies for the benefit of Harvey Seward. Dorothy, Sarah and Harvey, decedent's three daughters, thus each became a beneficiary of $30,000 worth of proceeds. The three instruments were essentially *217 identical. The assignment for the benefit of Dorothy will be described as typical. Decedent assigned to the trustee "any and all monies payable after his [decedent's] death on the above mentioned Life Insurance policy * * *". The trustee was "To have and to hold the same to the party of the second part, its successors or assigns, absolutely and without reservation, free from the control, claims, debts, demands, and charges of the party of the first part, his heirs, and personal representatives, and of any person whatsoever, but in trust, however, for the following uses and purposes." The trustee was authorized to invest and reinvest the proceeds. The net income was to be paid to Dorothy in quarterly installments during her lifetime. At her death the principal was payable to such persons as Dorothy might designate by will. If no such designations were made, then the trust estate went to Dorothy's children or their descendants per stirpes. Otherwise, the income was payable to decedent's son, William, and the daughters, Harvey and Sarah, equally until each reached 30 years of age, at which time their share of the principal was payable to them. If William, Harvey or Sarah died before *218 reaching 30 years of age with no descendants, such deceased child's share became payable annually to the survivors of them. If William, Harvey or Sarah died before reaching 30 years of age leaving descendants surviving, then such deceased child's share was to go per stirpes to such descendants. On June 16, 1919, decedent changed the beneficiary of the Travelers policy from his estate to the trustee. The insurance form used by decedent to make this change stated: "WHERE THE OPTION TO CHANGE BENEFICIARY IS GRANTED TO THE INSURED IN THE POLICY: - Provided the Policy is not assigned, the insured may at any time and from time to time change the beneficiary, by the use of this form, to take effect only when the consent of the Company to such change has been indorsed hereon." Under the policy decedent had the power to change the beneficiary. The trustee was made beneficiary subject to the terms of the trust created April 24, 1919, set out above. The change of beneficiary form also reserved to decedent the right to further change the beneficiary. In June, 1919, decedent executed two instruments of assignment covering the two Provident policies. Both instruments are essentially identical. *219 The instrument relating to policy No. 154,121 will be quoted as typical of both. "FOR VALUE RECEIVED I hereby transfer, assign, and set over unto Petersburg Savings & Trust Company, Trustee under a Deed of Harvey Seward dated April 24, 1919, copy of which is hereto attached and its successors or assigns, all my right, title and interest in Policy of Insurance issued by THE PROVIDENT LIFE AND TRUST COMPANY OF PHILADELPHIA, No. 154121 dated 9th Mo. 27th 1909, and all advantages to be derived therefrom; hereby exonerating The Provident Life and Trust Company of Philadelphia from any obligation or responsibility to see to the execution of said Trust or application of any moneys thereunder. "FURTHERMORE, I hereby constitute the above-named assignee or its lawful substitute, my lawful attorney for me and in my name to collect from the above-named Company any and all moneys which, under said policy, shall become owing thereon, whether for dividends, capital sum insured, or otherwise, and to acquit said Company therefor as fully as I could in person do or accomplish any or all of the acts aforesaid. "WITNESS my hand and seal, this 30 day of June 1919." Both of these Provident policies *220 were endowment policies. On February 21, 1920, decedent executed an instrument of assignment covering the Phoenix policy. By this instrument decedent assigned and transferred to the trustee the Phoenix policy together with any and all moneys payable thereunder after decedent's death. The terms of the trust were essentially the same as those of the trust created April 24, 1919, described above. The April 24, 1919, assignment had merely assigned and transferred any and all moneys payable after decedent's death, whereas the assignment of February 21, 1920, in addition purported to assign the policy itself. The assignment of February 21, 1920, provided further that: "The Trust hereby created and the interests hereunder are vested subject to the express condition that the party of the first part may revoke this agreement during his life time by filing with the Trustee and with the Phoenix Mutual Life Insurance Company of Hartford, at its home office, notice in writing of such revocation, signed by him and acknowledged before some officer of the State of Virginia authorized to take acknowledgments. And it is further understood that this agreement is subject to the beneficiary provisions *221 in said policy of life insurance, and that a change of beneficiary, made in accordance with the provisions of said policy, shall constitute a revocation of this declaration of trust." The Provident endowment policy, No. 270,780, matured February 28, 1937. On April 28, 1937, decedent and the trustee issued written instructions directing the insurance companies to retain the proceeds of the policy payable by virtue of its maturity without any rights in decedent to withdraw. The company was directed to pay interest to decedent semi-annually during his lifetime on such retained funds. At decedent's death the company was instructed to pay such proceeds to the trustee subject to the trust created April 24, 1919. Provident policy No. 154,121 matured September 27, 1937. On September 29, 1937, decedent and the trustee issued instructions to the company similar to those just described. On April 24, 1919, decedent assigned to the trustee any and all moneys paid after his death on policy No. 2,230,871 of which the Equitable Life Assurance Society of New York was insurer. This policy insured decedent's life for $100,000 and is not directly involved in this proceeding. The assignment was in *222 trust for the benefit of decedent's wife, Annie. The terms of the trust were essentially similar to those of the trust created for the children on the same date. Decedent borrowed money from the insurance company on this policy as follows: Date
Amount
March 18, 1922
$15,000.00
March 14, 1926
4,540.59
March 15, 1927
5,859.85
March 15, 1928
5,504.76
March 15, 1930
5,523.07
March 15, 1931
5,910.70
March 15, 1932
7,292.24
March 15, 1933
6,642.00
March 15, 1934
4,033.92
March 15, 1935
2,290.04
$62,597.17
None of the money borrowed was paid to the trustee. This policy was surrendered on May 25, 1936, and its cash surrender value applied to the payment of the principal of such loans. On August 24, 1931, decedent and the trustee filed suits in the Hustings or Corporation Court of the City of Petersburg against the insurance companies here involved, the beneficiaries of the trust and their descendants. The complaint recites the creation of the trust herein described and alleges: "7. That it was not the intention of the said Harvey Seward nor of the Petersburg Savings and Trust Company, named as Trustee under the said contracts, to deprive the said *223 Harvey Seward of the control of the said life insurance contracts during his lifetime, nor of any rights or benefits to which he might be entitled under or by reason of the same, nor to vest in the said Trustee any interest in the policies themselves, but only to name the said Petersburg Savings and Trust Company, Trustee, beneficiary under the said policies, and to transfer to it any moneys payable after his death, such money when and if received by the Trustee, to be held by it on the trusts set forth, in the several contracts. Neither was it intended that the said Harvey Seward should not have the right during his lifetime to borrow money on said policies in accordance with their loan values, or to change the beneficiaries under the said policies, and revoke or cancel any or all of the said trust agreements. * * *
"9. Your complainants believe and charge that under the true meaning and intent of the said trust agreements, and of the said insurance policies the said Harvey Seward is entitled during his lifetime to the full dominion and control of the said life insurance policies with the right to borrow on them in accordance with their contract loan values; that the said Harvey *224 Seward has the right and privilege of revoking and cancelling the said trust agreements, and if these rights are not clearly expressed in the said contracts and agreements, as your complainants believe they are, then he is entitled to have the said contracts, policies and assignments reformed and rewritten by this Honorable Court so as to express the true intention of the parties." The beneficiaries jointly answered that they believed the statements in the complaint were true and alleged that they were willing and anxious that the relief sought by the complaint be granted. The insurance company demurred to the complaint on the grounds, among others, that the court was without authority to alter or cancel the trust agreements and that the unborn children of the beneficiaries were not properly represented and further that the trustee should be a defendant and not a petitioner. On October 20, 1936, by consent of all the parties the case was dismissed. Upon the death of decedent on February 17, 1943, Sarah Elizabeth Seward, one of the daughters of the decedent, was of the age of 43 years, was married, her married name being Sarah Elizabeth Lane, and was the mother of two children; *225 Dorothy Venning Seward, another daughter, was of the age of 39 years, was married, her married name being Dorothy Venning Woods, and was the mother of two children; Harvey Seward, the third daughter of decedent, was of the age of 32 years and was unmarried, and William Royal Seward, the only son of decedent, was of the age of 41, was married, and was the father of two children. All of the children of decedent, and their children referred to above, are living at this time. Upon the death of decedent the trustee received from the several policies of insurance and certificates the amounts which were payable thereon at his death, and the trustee is now holding the amounts so received under the respective trusts, or the securities in which the same have been invested, in accordance with the terms of the several trusts, and is making payments of the net income therefrom to the daughter of the decedent named in the respective contracts as the immediate beneficiary thereunder. Decedent paid all the premiums on all the policies here in question. All the policies were paid up in full prior to January 10, 1941. The estate tax return did not include the value of any of the policies in question. *226 Respondent in his deficiency determination included the full value of the policies in the estate under section 811 (c) and (g) of the Internal Revenue Code. Opinion Decedent retained substantial incidents of ownership in the insurance policies in question during his lifetime and they are, in our opinion, all includible in his estate under either section 811 (c), Internal Revenue Code, as transfers intended to take effect at or after his death, or under section 811 (g), Internal Revenue Code. By the assignments of April 24, 1919, decedent assigned only the moneys "payable after his death" and not the policies themselves. Petitioner, in effect, argues that the assignments of the moneys payable after death on the policies were equivalent to assigning the policies themselves. Petitioner bases this contention on the theory that decedent, under a proper construction of the assignments, precluded himself from doing anything which would defeat the full payment of the proceeds to the trustee after decedent's death. Petitioner in this connection points out that the trustee was to hold the insurance proceeds "free from the control, claims, debts, *227 demands and charges of" the decedent. We do not think the assignments can be so construed and, in our opinion, the intention of the parties as evidenced by subsequent events, contradicts petitioner's interpretation. On June 16, 1919, decedent changed the beneficiary of the Travelers policy and reserved the right to make further changes. On February 21, 1920, decedent assigned the Phoenix policy to the trustee. On April 24, 1919, decedent assigned the money payable on this policy after his death to the trustee. If the assignment of April 24 was the equivalent of assigning the policy itself, further assignment of the policy itself on February 21, 1920, would seem not only needless but impossible. It is also significant that the February 21, 1920, assignment which purported to assign the policy itself expressly reserved to decedent the power of revocation and the right to change the beneficiary of the policy. This strongly indicates that the parties appreciated the difference between assigning proceeds and assigning the policy itself and that the two were not considered equivalents. Equitable policy No. 2,230,871 for $100,000, which is not directly involved here, was the object of an *228 assignment similar in every essential respect to the assignments of April 24, 1919, here in question. Decedent borrowed money on this policy and finally surrendered it. If decedent could do this with respect to one policy we see no reason why he could not do likewise with the others since the assignments were essentially the same for all. Finally, the suit brought by the decedent and the trustee clearly indicates the intention of the parties. This suit was dismissed by mutual consent, it is true, but it is nonetheless a clear indication of the parties' understanding of the assignments. The Provident endowment policies require special notice because in addition to having been subject to the assignment of April 24, 1919, they were further assigned in June, 1919. The June assignment set out in our findings of fact in terms assigned the policies themselves and further authorized the trustee as decedent's lawful attorney and for and in decedent's name to collect any money due on account of such policies. These June assignments are to us somewhat ambiguous because if the assignment of the policies themselves was effective we can see no need for constituting the assignee an attorney to *229 make collections for the assignor. We have concluded that the June instruments of assignment covering the Provident endowment policies did not divest decedent of incidents of ownership. Only such a conclusion can reconcile the instructions given the insurance company by decedent and the trustee when these policies matured. Unless decedent retained some control and ownership in these policies under the June 1919, assignments he could have had no power to instruct the company regarding the retention of proceeds or the payment of interest thereon. The trustee under the terms of the trusts created April 24, 1919, had no authority to direct the payment of such interest to decedent. After the maturity of the policies and by virtue of the instructions decedent presumably did receive the interest on the proceeds of the policies during his lifetime. We think it is abundantly clear, therefore, that decedent did in fact own a very substantial and valuable interest in these policies and their proceeds during his lifetime. For the reasons above indicated we conclude that decedent retained subtantial incidents of ownership in all of the policies here involved during his lifetime. The decedent *230 paid all the premiums on all the policies. It is, therefore, clear that these policies are includible in decedent's estate either under section 811 (c) or (g), and we so hold. Decision will be entered under Rule 50.